**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGG SMITH,<br>MICHAEL NOWAK,<br>JEFFREY RUFFO, and<br>CHRISTOPHER JORDAN,<br><br>　　　　　　Defendants. | Case No. 19-cr-00669<br><br>Hon. Edmond E. Chang |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO
EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF ROBERT SNIEGOWSKI**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................2

LEGAL STANDARD.....................................................................................................................4

ARGUMENT..................................................................................................................................5

        A.        Mr. Sniegowski's Expected Testimony Is Expert Testimony Under FRE 702..................................................................................................................................5

        B.        Mr. Sniegowski's Opinion Does Not Meet the Requirements of Rule 702.............6

        C.        Mr. Sniegowski's Opinion Is Not Probative and Is Unfairly Prejudicial ..............10

        D.        Mr. Sniegowski Should Be Precluded from Testifying That Spoof Orders Constitute Market Manipulation and Cause Artificial Price Movement ...............11

CONCLUSION.............................................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**

*Bielskis v. Louisville Ladder, Inc.*,
  663 F.3d 887 (7th Cir. 2011) ............................................................................................... 4

*C.F.T.C. v. Wilson*,
  No. 13 Civ. 7884 (RJS), 2018 WL 6322024 (S.D.N.Y. Nov. 30, 2018) ................................ 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ........................................................................................................ 4, 5

*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997) ........................................................................................................ 5, 9

*Hershey v. Pacific Investment Management Co.*,
  697 F.Supp. 2d 945 (N.D. Ill. 2010) ................................................................................... 13

*In re Amaranth Natural Gas Commodities Litigation*,
  730 F.3d 170 (2d Cir. 2013) ............................................................................................... 12

*In re Testosterone Replacement Therapy Products Liability Litigation*,
  No. 14 C 1748, 2017 WL 1836443 (N.D. Ill. May 8, 2017) .......................................... 11, 13

*Kenosha Liquor Co. v. Heublein Inc.*,
  895 F.2d 418 (7th Cir. 1990) ............................................................................................... 9

*Krys v. Aaron*,
  No. 14-2098, 2015 WL 3857085 (D.N.J. June 22, 2015) ................................................... 11

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................................................ 4

*Lewis v. CITGO Petroleum Corp.*,
  561 F.3d 698 (7th Cir. 2009) ............................................................................................... 4

*Smith v. Ford Motor Co.*,
  215 F.3d 713 (7th Cir. 2000) ............................................................................................... 4

*United States v. Brown*,
  7 F.3d 648 (7th Cir. 1993) ............................................................................................. 5, 12

*United States v. Conn*,
  297 F.3d 548 (7th Cir. 2002) ........................................................................................... 4, 6

*United States v. Mamah*,
  332 F.3d 475 (7th Cir. 2003) .......................................................................................... 4, 13

*United States v. Parra*,
  402 F.3d 752 (7th Cir. 2005) ............................................................................................... 4

*United States v. Radley*,
  558 F. Supp. 2d 865 (N.D. Ill. 2008) .................................................................................. 13

**Rules**

Fed. R. Evid. 701(c) ............................................................................................................... 4

Fed. R. Evid. 702 Advisory Comm. Note (2000 amends.) .................................................. 4, 9

**PRELIMINARY STATEMENT**

Defendants Gregg Smith, Michael Nowak, Jeffrey Ruffo, and Christopher Jordan respectfully submit this memorandum of law in support of their motion to exclude portions of the anticipated expert testimony of Robert Sniegowski. The government expects Mr. Sniegowski to testify, in relevant part, that the CME Group, Inc. ("CME") has always required that orders reflect a trader's "genuine intent to buy or sell," and relatedly, that it is and always has been a violation of CME rules for a trader to place an order without that "genuine intent to trade." This proposed testimony is plainly expert testimony because it is based on Mr. Sniegowski's specialized knowledge and experience at the CME. Because such testimony fails to meet the reliability requirements of Federal Rule of Evidence ("FRE") 702, Defendants respectfully submit that it is inadmissible.

Mr. Sniegowski's opinion that the CME has always required that orders be placed with "genuine intent" to trade is not supported by—and arguably is contradicted by—the CME's own rules and other CME materials relating to the rules, including the glossary published by the CME. His opinion also is not based on the CME's enforcement actions. His opinion appears to lack any foundation beyond his own bald assertion, and thus fails to meet the standard for expert testimony, despite his long tenure at the CME. Furthermore, his unfounded interpretation will not assist the trier of fact in determining any issue in this case. The government has not demonstrated, and indeed cannot demonstrate, that Mr. Sniegowski's interpretation was conveyed to Defendants or other market participants at all, let alone as the authoritative view of the CME. Thus his opinion lacks probative value and poses a substantial risk of unfair prejudice, because the question of what an order communicates or represents to other market participants will be a critical factual issue at trial. The government intends to rely on Mr. Sniegowski's opinion to establish that Messrs. Smith,

1

Nowak, and Jordan's alleged spoof orders were misrepresentations to other market participants—an essential element of the government's fraud theory. *See* United States' Mot. for Prelim. Admission of Co-Conspirator Statements at 55, ECF No. 294. The government should not be permitted to base this central contention of its case on an unsupported "expert" opinion.

We also move to preclude Mr. Sniegowski from testifying, as he did in *United States v. Bases* (without objection), that so-called "spoof orders" constitute market manipulation and cause artificial price movement. These opinions are unfairly prejudicial to Defendants, who are variously charged with attempted price manipulation and conspiracy to commit price manipulation, which requires the government to prove, among other things, that Defendants agreed and attempted to create an artificial price. Moreover, the opinion that spoofing causes artificial market prices is without basis, and the government did not, and cannot, offer any market analysis or data to support it. The opinion also is contradicted by the applicable case law concerning the meaning of an artificial price. It is therefore inadmissible under FRE 702.

## BACKGROUND

For the last 30 years, Mr. Sniegowski has worked in the CME's Market Regulation Department, where he has held various roles, including "working as an investigator focused on rule-specific enforcement programs." Letter from Avi Perry dated June 21, 2021 ("Expert Discl."), at 16 (Ex. A to Declaration of Jonathan D. Cogan ("Cogan Decl.")). Since 2010, he has worked in the Rules & Regulatory Outreach Group, "which is focused on ensuring that market participants have accurate and clear guidance on Exchange rules and other regulatory issues." *Id*. In this role he provides guidance to market participants on compliance with CME rules. *Id*. Mr. Sniegowski's testimony will be based on his experience at the CME and knowledge of and experience with CME rules—including the interpretation and application of those rules. *Id.* at 2. The government has

represented that Mr. Sniegowski "generally is aware of prior CME enforcement actions," but that the government does "not intend to elicit testimony from him about any specific, prior CME enforcement actions." Letter from Matthew Sullivan dated July 19, 2021, at 2 (Cogan Decl., Ex. B).

Mr. Sniegowski is expected to opine that, at least since he joined the CME 30 years ago, the CME has required that "all orders. . . be entered for the purpose of executing a *bona fide* transaction, meaning with the genuine intent to buy or sell." Expert Discl. at 2. He is also expected to testify, relatedly, that orders placed on Globex, the CME's electronic trading platform, "were required to reflect a trader's genuine intention to buy or sell," and in particular that the CME's rules, including Rules 432 and 575, prohibited traders from "placing orders without a genuine intent to buy or sell."[1] *Id.* The government has noted that it does not believe that Mr. Sniegowski's expected testimony constitutes expert testimony. *Id*.

Mr. Sniegowski recently testified as an expert for the government in *United States v. Bases*. Trial Tr. at 215:17–277:18; 291:10–293:4; 296:3–366:13, *Bases*, No. 18-cr-48 (N.D. Ill. July 21, 2021) (Lee, J.) ("*Bases* Tr.") (Cogan Decl., Ex. C). His testimony there was largely, though not entirely, consistent with the government's disclosures of his expected testimony in this case. In addition to the opinions set forth above, Mr. Sniegowski also testified there that spoofing constitutes market manipulation and causes artificial price movement. *Id.* at 237:6–238:6.

---

[1] Mr. Sniegowski also is expected to testify that "for the entirety of his tenure at the CME, deception in trading on CME exchanges has not been permitted by CME rules"; "CME rules, at least since he began working at the CME, prohibited traders from . . . committing fraud [and] manipulating futures prices"; "traders were expected to understand and comply with CME rules"; "prior to the issuance of Rule 575, the CME undertook disciplinary actions under Rule 432 against traders who placed non-*bona fide* orders, that is, orders placed with the intent to cancel before execution"; and "fraud, manipulation, and the placement of orders with the intent to cancel before execution all have the potential to negatively impact both market integrity and the CME's operations." Expert Discl. at 2. We reserve the right to object at trial to the admissibility of this testimony, including on grounds of relevance and unfair prejudice.

3

**LEGAL STANDARD**

FRE 702 provides that an expert witness must be qualified "by knowledge, skill, experience, training or education." Expert testimony, unlike lay witness testimony, "brings to an appraisal of [the] facts a scientific, technological or other specialized knowledge that the lay person cannot be expected to possess." *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002); *cf.* FRE 701(c) (lay witness testimony is "*not* based on scientific, technical, or other specialized knowledge within the scope of Rule 702") (emphasis added).

Expert testimony is admissible if (1) the expert is qualified, (2) the expert's methodology is reliable, and (3) the testimony will assist the jury in understanding the evidence or determining a fact at issue. *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011) (citing FRE 702). These requirements, which are based on the Supreme Court's guidance for assessing expert testimony in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), apply to expert testimony based on specialized experience, as well as scientific analysis. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999); *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000). They are designed to ensure that expert testimony is "not only relevant, but reliable." *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) (citation omitted). The party offering such expert testimony must satisfy these requirements by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Where, as here, the proposed witness's expertise is based "solely or primarily on experience," the witness "must explain how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." FRE 702 Advisory Comm. Note (2000 amends.). Courts do not simply "tak[e] the expert's word for it." *Id.*; *cf. United States v. Mamah*, 332 F.3d 475, 477–78 (7th Cir. 2003) (where

4

expert has worked with facts or data, Rule 702 requires link between expert's conclusions and those facts and data) (citing *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997)).

In assessing the admissibility of expert testimony, the trial court "should also be mindful of other applicable rules," including FRE 401 and 403, and consider the probative value of the testimony, weighed against any prejudicial effect. *Daubert*, 509 U.S. at 595; *United States v. Brown*, 7 F.3d 648, 655 (7th Cir. 1993) ("[The] danger of unfair prejudice may be heightened by the 'aura of special reliability' that often surrounds expert testimony.").

## ARGUMENT

A. <u>Mr. Sniegowski's Expected Testimony Is Expert Testimony Under FRE 702</u>

The government states that Mr. Sniegowski's expected testimony is not expert testimony (*i.e.*, that it does not need to meet the standards of FRE 702), Expert Discl. at 2, but the government is incorrect. Mr. Sniegowski is expected to describe and interpret CME rules based on the extensive specialized knowledge and experience he acquired during his 30-year tenure at the CME. His knowledge and experience in this area far exceeds that of a layperson, and he is expected to offer interpretations of CME rules that go well beyond simple reading of the text.

In both *Bases* and *United States v. Vorley*, the government called a CME witness to give testimony regarding the CME's rules.[2] In both cases, the court held, over the government's objection, that the proposed witness's testimony was clearly expert testimony because it would be

---

[2] In *Bases*, the government initially disclosed John Scheerer, the CME Group's Senior Director of Global Operations, as an expert witness with respect to CME rules. His anticipated testimony was very similar to that of Mr. Sniegowski here. *See* Exhibit A to Defs' Mot. to Exclude Expert Testimony of John Scheerer at 1–2, *Bases*, No. 18-cr-48 (N.D. Ill. Apr. 2, 2021), ECF No. 404-1. The government later substituted Mr. Sniegowski for Mr. Scheerer as its expert witness at trial in *Bases*. *See* Exhibit B to Pacilio Mot. for Leave to Suppl. Witness List at 1–2, *Bases* (N.D. Ill. June 18, 2021), ECF No. 577-2. In *Vorley*, the government called Mr. Scheerer to testify that it had always been violative of CME rules for traders to place orders they did not intend to trade. Trial Tr. at 291, *Vorley*, No. 18-cr-35 (N.D. Ill. Oct. 8, 2020), ECF No. 341 ("*Vorley* Tr."). Mr. Sniegowski was not a witness in *Vorley*.

5

based on the witness's specialized knowledge and experience. *See* Order at 6, *Bases*, No. 18-cr-48 (N.D. Ill. July 1, 2021) (Lee, J.), ECF No. 586 ("*Bases* Order") ("[The witness's] interpretation of CME rules derives from specialized knowledge that he gained while a CME trader and employee and falls squarely within expert witness testimony governed by Rule 702."); *Vorley* Tr. at 293, No. 18-cr-35 (N.D. Ill. Oct. 8, 2020) (Tharp, J.) ("[The witness's] testimony about the meaning of CME rules is based on specialized knowledge and experience he garnered working at the CME Global Command Center. Not just any CME employee would be qualified or able to testify about the meaning of CME rules. This is an opinion about the meaning of a complex rule incorporating a number of terms of art. It's either [the witness's] own opinion and/or he's reporting the opinion of the CME as an institution about the meaning of these rules, but either way, it's testimony covered by 702.").

That reasoning is equally applicable here. Mr. Sniegowski's expected testimony is based on his specialized experience as a long-time employee in the CME's Market Regulation Department and could not be offered by a layperson. The proposed testimony therefore is expert testimony and must meet the admissibility requirements of FRE 702. *See Conn*, 297 F.3d at 554.

**B.**     **Mr. Sniegowski's Opinion Does Not Meet the Requirements of Rule 702**

Mr. Sniegowski's testimony will be based on the specialized knowledge and experience he obtained during his long tenure at the CME. But his opinion that the CME's rules have always required that all orders be entered "with the genuine intent to buy or sell," and that they prohibited the "placing of orders without a genuine intent to buy or sell," is not based on CME rules, CME enforcement actions, or indeed any other articulable or reliable basis. This opinion therefore is inadmissible pursuant to FRE 702.

Mr. Sniegowski will testify that, at all times relevant to this case, "the CME required all orders to be entered for the purpose of executing a bona fide transaction, *meaning with the genuine*

6

*intent to buy or sell.*" Expert Discl. at 2 (emphasis added). CME Rule 575, issued in September 2014 in response to the passage of the Dodd–Frank Act, *Bases* Tr. 336:21–337:2, requires that orders be "entered for the purpose of executing bona fide transactions." Market Reg. Advisory Notice, CME Group RA 1405-5 (Aug. 29, 2014) (Cogan Decl., Ex. D), at 2. But the notion that a "bona fide" order means an order placed "with the genuine intent to buy or sell" appears nowhere in Rule 575, and neither the government's disclosures nor Mr. Sniegowski's prior testimony provide any foundation for this interpretation.

Setting aside the question whether Rule 575 can be read to require that orders be placed with "genuine intent" to buy or sell, there is no support for Mr. Sniegowski's opinion that this requirement existed before Rule 575 was issued in September 2014—by which time the vast majority of the allegedly criminal trading activity in this case occurred.[3] Rule 432, which was issued decades prior to Rule 575, is a broadly worded catch-all provision defining more than 20 "general offenses." It does not require that orders be placed with any particular intent, and indeed makes no reference to "bona fide transactions." CME Rule 432 (Cogan Decl., Ex. E). During his *Bases* testimony, Mr. Sniegowski offered only conclusory assertions to support his opinion that the CME has always, even prior to Rule 575, required that orders be placed with the "genuine intent to buy or sell." For example, he interpreted Rule 575's "bona fide transactions" requirement to mean that "when you enter an order, it has to be actually for the purpose of buying or selling." *Bases* Tr. 245:24–246:8. When asked why this is not a "new idea," he asserted, without elaboration, "it's why the exchanges exist." *Id.* at 246:9–12.

---

[3] Of the 574 trading sequences that the government has indicated will be part of its case-in-chief, there are only 12 that occurred after September 2014, all involving either Mr. Smith or alleged co-conspirator Christian Trunz.

7

Mr. Sniegowski's opinion is not supported by publicly available CME reference materials. The rulebooks issued by the four exchanges that make up the CME Group (CME, CBOT, NYMEX, and COMEX) do not define "order" or "bona fide transaction," and the relevant terms that *are* defined do not incorporate a requirement that orders must reflect "genuine intent to buy or sell." To the contrary, the CME Group's publicly available glossary states that bids and offers indicate only a *willingness* on the part of the trader to buy or sell. *See* Glossary, CME Group, www.cmegroup.com/education/glossary.html (last visited July 20, 2021) ("Ask Price: Also called the 'offer.' Indicates a willingness to sell a futures or options on futures contract at a given price"; "Bid Price: An offer to buy a specific quantity of a commodity at a stated price or the price that the market participants are willing to pay").[4] The CME's rules, definitions, and publicly available glossary thus provide no basis for—and in fact undercut—Mr. Sniegowski's opinion that the CME has always required that orders reflect a genuine intent to buy or sell (i.e., that a trader must be more than "willing" to execute, *Bases* Tr. 266:25–267:13), and that the CME rules have always prohibited traders from placing orders without such intent.

Finally, Mr. Sniegowski's opinion is not based on interpretations of CME rules developed through its enforcement actions. As an initial matter, Mr. Sniegowski is not an expert in CME enforcement. While the government's disclosures state that he will testify based on "his experience dealing with CME rules during his tenure at the CME (including how those rules are applied)," Expert Discl. at 2, Mr. Sniegowski himself stated during his *Bases* testimony, "I have not applied [Rule 432] myself in practice. I don't handle prosecuting rule violations." *Bases* Tr. 233:15–24. In fact, he explained that bringing disciplinary actions against market participants for

---

[4] While the CME glossary is not intended to state the views of the CME Group as to the legal significance of any term, it is nonetheless a publicly available reference guide intended to "assist the public in understanding some of the specialized words and phrases used in the futures industry."

8

CME rule violations falls outside his area of responsibility: "[M]y role isn't to actually get involved in case work, actual investigations that lead to prosecutions . . . my team doesn't regularly look at disciplinary actions . . . that's not what we're really there for." *Id.* at 292:18–22. Though he stated that the CME historically had prosecuted spoofing activity under Rule 432, he could recall only a single enforcement action, and did not know whether that action came before or after the passage of Dodd–Frank, which prohibited spoofing.[5] *Id.* at 291–92. And nowhere in his testimony in *Bases* did Mr. Sniegowski support his opinion that the CME requires orders to reflect a trader's genuine intent to trade by reference to prior enforcement actions.

There is simply nothing in the government's disclosures or in Mr. Sniegowski's prior testimony that demonstrates the basis for his opinion that CME rules have always required that orders reflect a trader's "genuine intent" to trade. Mr. Sniegowski's testimony utterly fails to explain his opinion, and the government's disclosures provide no discernible basis for it beyond general references to Mr. Sniegowski's experience. This is plainly insufficient. *See* FRE 702 Advisory Comm. Note (2000 amends.); *Kenosha Liquor Co. v. Heublein Inc.*, 895 F.2d 418, 420 (7th Cir. 1990) ("Expert opinions are worthless without data and reasons."). Mr. Sniegowski's opinion appears to be based solely on his personal interpretation of CME rules, and "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

---

[5] Mr. Sniegowski recalled only the CME enforcement action against Panther Energy Trading, LLC and its owner, Michael Coscia, which the CME settled on July 22, 2013, in conjunction with a CFTC action on the same date, roughly two years after the spoofing provision of Dodd-Frank took effect. *See Bases* Tr. at 291. In *Bases*, the court found proposed expert testimony that CME rules have always prohibited non–*bona fide* orders (defined as the entering of trades "without the intent to actually execute the trade") to be "reliable and corroborated," based on the fact that the CME had taken disciplinary action against Mr. Coscia for placing non–*bona fide* orders in violation of CME rules, including Rule 432. *Bases* Order at 7. We respectfully submit that the fact of a single specific CME enforcement action that postdates Dodd–Frank is an insufficient basis for expert opinion that the CME always prohibited the placing of orders without a genuine intent to buy or sell.

9

C. **Mr. Sniegowski's Opinion Is Not Probative and Is Unfairly Prejudicial**

Mr. Sniegowski's unfounded opinion that CME rules have always required orders to be placed with a genuine intent to trade will not assist the jury in determining any fact at issue, and should therefore be excluded under FRE 702 and 401. Defendants are not charged with violating CME rules; they are charged with violating federal laws prohibiting spoofing, market manipulation, fraud and conspiracy. Even if conduct in violation of CME rules can be probative of intent to defraud, Mr. Sniegowski's unsupported interpretation of the rules concerning the placement of orders is not probative because the government has not—and, in our view, cannot—establish that the Defendants were aware of his interpretation. The government does not appear to contend, and Mr. Sniegowski did not testify in *Bases*, that his interpretation of the CME rules ever was made known to market participants, or that a reasonable market participant would be aware of it. *See Bases* Tr. 268:12–269:1. In fact, Mr. Sniegowski disclaimed any opinion on the views of reasonable market participants with respect to the CME rules as outside the scope of his testimony. *Id.* at 254:9–11.[6]

The lack of probative value of Mr. Sniegowski's opinion is outweighed by the risk of substantial and unfair prejudice to Defendants. Although he will not testify as to the propriety of

---

[6] The decisions in *Bases* and *Vorley* are not to the contrary, because Mr. Sniegowski's expected testimony goes beyond what those courts found to be relevant. Judge Lee disagreed with defendants' contention that expert testimony that "CME rules have always prohibited non-*bona fide* orders"—defined as "orders a trader places with the intent *not* to execute them" was irrelevant. He concluded that the testimony would provide context for the trades at issue, because a reasonable juror could infer that the defendants were aware of the rule against placing non-*bona fide* orders. *Bases* Order at 3–4. Similarly, in *Vorley*, Judge Tharp found expert testimony that the CME has always prohibited the placement of orders a trader did not intend to execute to be relevant, noting evidence indicating the defendants were aware of CME policies. *Vorley* Tr. at 291–292. But Mr. Sniegowski's testimony in *Bases*, and his anticipated testimony here, goes further than those decisions allowed, asserting that the CME has always required that orders reflect a "genuine intent" to buy and sell, and that traders must "actually want" to trade. *Bases* Tr. at 267:3–5. This is far beyond the text of the CME rules, and beyond what market participants could have reasonably inferred the rules to mean. In short, the connection between the expected testimony and the defendants' knowledge that the courts in *Bases* and *Vorley* relied on in finding the testimony relevant is not present here.

Defendants' particular trading activities, his opinion implicates a factual question central to this case: what an order represents.[7] Memo. Op. & Order at 29, *Vorley*, No. 18-cr-35 (N.D. Ill. Oct. 21, 2019) (Tharp, J.), ECF No. 119 ("Whether there was anything false or misleading about the communications the defendants made when they placed Spoofing Orders will depend on what their bids and offers meant to other market participants. What, if anything, beyond commodity, price, and quantity an order conveys is plainly a question of fact . . ."). To permit the government to elicit purported expert testimony with no discernible factual, legal, or regulatory basis from a CME-affiliated witness would severely prejudice Defendants, and such testimony should therefore be excluded. *See In re Testosterone Replacement Therapy Prod. Liab. Litig.*, No. 14 C 1748, 2017 WL 1836443, at *16 (N.D. Ill. May 8, 2017) (Kennelly, J.) (excluding expert opinion lacking sufficient basis "either as speculative, unhelpful to the jury, or unfairly prejudicial under [FRE] 403"); *see also Krys v. Aaron*, No. 14-2098, 2015 WL 3857085, at *2 (D.N.J. June 22, 2015) (excluding reference to violations of Irish Stock Exchange rules because the reference would "confuse the jury's understanding of the violations and/or breaches actually alleged in this litigation," "tend to cause the jury to believe that such a violation is actionable in this case," and "may lead the jury to unfairly presume that Defendants' alleged violations of Irish law necessarily implies that Defendants breached or violated" the rules at issue).

### D. Mr. Sniegowski Should Be Precluded from Testifying That Spoof Orders Constitute Market Manipulation and Cause Artificial Price Movement

We also move to exclude Mr. Sniegowski from testifying that "spoof orders" constitute market manipulation or a "manipulative device" or cause "artificial price movement." This anticipated testimony was not included in the government's disclosures, but the government

---

[7] For the reasons stated above, we respectfully disagree with the courts' decisions in *Bases* and *Vorley* that similar testimony was not unduly prejudicial because it did not address the specific orders placed or trades executed by the defendants.

elicited it from Mr. Sniegowski in *Bases*. *See, e.g.*, *Bases* Tr. at 229:11–25 ("[T]he order that is the spoof order is the order that's looking to push the market in a particular direction, where there's no intent by the market participant to actually execute that order. And, so, it's an order that's looking to create an artificial price movement up or down . . ."); *Id.* at 230:23–25 (stating that such orders cause "artificial" price movement because "there is no intent to trade"); *Id.* at 237:13–16 ("[I]n spoofing, you're entering an order or orders that you don't intend to trade, for the purpose of pushing the market in a particular direction, which would be, basically, a manipulation of the prices in the market."); *Id.* at 238:1–3 ("[I]f you're entering an order that's looking to artificially move prices, I'd consider that to be a manipulative device . . .").

Testimony that spoofing (the placement of an order that the trader intends to cancel) by definition creates "artificial price movement" is unsupported by any economic analysis, has no basis in fact, and is contrary to relevant case law. We respectfully submit that the government should be precluded from offering such testimony in this case, particularly with the "aura of special reliability" that expert testimony of a CME witness will carry. *See Brown*, 7 F.3d at 655. Indeed, even trading with the intent to affect price—let alone placing orders with the intent to cancel them—is insufficient to establish an intention to cause artificial prices. *See C.F.T.C. v. Wilson*, No. 13 Civ. 7884 (RJS), 2018 WL 6322024, at \*12–15 (S.D.N.Y. Nov. 30, 2018) (CFTC's argument that defendant traded with intent to affect settlement prices was insufficient to establish existence of artificial price under manipulation statute) (citing *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 173 (2d Cir. 2013)). Establishing the existence of an artificial price (or an attempt to create an artificial price) requires expert, fact-based economic analysis that demonstrates that the prices that the defendants caused (or attempted to cause) did not reflect fair market value. *See Wilson*, 2018 WL 6322024, at \*13 (CFTC did not demonstrate existence of an

12

artificial price where expert's opinions were not premised "on evidence or settled economic principles"); *Hershey v. Pac. Inv. Mgmt. Co.*, 697 F.Supp. 2d 945, 956 (N.D. Ill. 2010) (Keys, Mag. J.) (expert permitted under *Daubert* to opine on artificiality of price only where he applied detailed data analyses and "chose data and a methodology prescribed by a respected text").

The government does not proffer that Mr. Sniegowski has conducted any fact-based economic analysis of whether so-called spoof orders create artificial prices, nor that he is qualified to do so. Because Mr. Sniegowski's opinion that spoof orders create artificial price movement because they are placed without the intent to trade is both factually unsupported and contrary to the law concerning price manipulation, it fails to meet the reliability threshold of FRE 702. *See Mamah,* 332 F.3d at 477–78.

Furthermore, such testimony is particularly prejudicial here, where (unlike in *Bases*) all four Defendants are charged with conspiracy to commit price manipulation, and Messrs. Smith and Nowak are charged with attempted price manipulation. The specific intent to cause an artificial price, the existence of an artificial price, and the defendant's causation of the artificial price are elements of price manipulation under 7 U.S.C. § 13(a)(2). *United States v. Radley*, 558 F. Supp. 2d 865, 876 (N.D. Ill. 2008) (Castillo, J.). While Mr. Sniegowski's testimony is offered as it relates to CME rules and not federal law, there is a significant risk that his testimony will be understood as a legal determination that elements of attempted price manipulation and conspiracy to commit price manipulation have been established in this case. His testimony therefore would be significantly and unfairly prejudicial to the Defendants, and should be excluded under FRE 403. *See In re Testosterone Replacement Therapy*, 2017 WL 1836443, at \*16.

Similarly, Mr. Sniegowski's opinion that spoofing constitutes market manipulation or a "manipulative device" also should be precluded as unfairly prejudicial. In *Bases*, Mr. Sniegowksi

13

testified that spoofing—which he defined as "entering an order that's looking to move the price," *Bases* Tr. at 238:19–20—was a manipulative device in violation of CME Rule 432.H, which prohibits "engag[ing] in, or attempt[ing] to engage in, the manipulation of prices of Exchange futures or options contracts." The federal law that prohibits attempted price manipulation, 7 U.S.C. 13(a)(2), is similar to the CME rule: it provides that it is a felony to "manipulate or attempt to manipulate the price of any commodity . . . for future delivery . . . ." Here again there is a significant risk that Mr. Sniegowski's testimony will be understood as a legal opinion that the spoofing conduct alleged here violates one of the federal statutes with which Defendants are charged. Such testimony is impermissible expert testimony principally because it effectively instructs the jury on the law (a role reserved for this Court), and because there appears to be no basis for it beyond Mr. Sniegowski's conclusory assertions.[8] It is plainly unfairly prejudicial to Defendants for the same reasons. We submit that because the probative value of such an opinion is minimal, and far outweighed by the unfair prejudice, this testimony should not be permitted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court preclude Mr. Sniegowski from offering opinions about the aforementioned topics.

---

[8] We note that Mr. Sniegnowski's testimony that spoofing violates CME Rule 432.H is not supported by prior CME enforcement actions—which to our knowledge have not been brought under 432.H. His testimony also is not supported by the CME's guidance concerning Rule 575, which stated that the practices prohibited by Rule 575 (including spoofing) had "historically been prohibited by and prosecuted under other Exchange rules," including 432.T, 432.B.2, and 432.Q, (not 432.H). *See* Cogan Decl. Ex. D at 1.

14

Dated: August 5, 2021

                                                                                                  Respectfully submitted,

| | |
|---|---|
| /s/ Jonathan D. Cogan | /s/ David Meister |
| Jonathan D. Cogan | David Meister |
| Sean S. Buckley | Jocelyn E. Strauber |
| Leanne A. Bortner | Chad E. Silverman |
| KOBRE & KIM LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| 111 West Jackson Boulevard | One Manhattan West |
| Chicago, IL 60604 | New York, NY 10001 |
| (212) 488-1206 | (212) 735-2100 |
| | |
| *Counsel for Gregg Smith* | William E. Ridgway |
| | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| | 155 North Wacker Drive |
| | Chicago, IL 60606 |
| | (312) 407-0449 |
| | |
| | *Counsel for Michael Nowak* |
| | |
| /s/ Guy Petrillo | /s/ James J. Benjamin, Jr. |
| Guy Petrillo | James J. Benjamin, Jr. |
| Daniel Z. Goldman | Parvin D. Moyne |
| PETRILLO KLEIN & BOXER LLP | AKIN GUMP STRAUSS HAUER & FELD LLP |
| 655 Third Avenue | One Bryant Park |
| New York, NY 10017 | New York, NY 10036 |
| (212) 370-0331 | (212) 872-1000 |
| | |
| *Counsel for Jeffrey Ruffo* | Megan Cunniff Church |
| | MOLOLAMKEN LLP |
| | 300 North LaSalle Street |
| | Chicago, IL 60654 |
| | (312) 450-6716 |
| | |
| | *Counsel for Christopher Jordan* |