IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGG SMITH,<br>MICHAEL NOWAK,<br>JEFFREY RUFFO, and<br>CHRISTOPHER JORDAN,<br><br>                Defendants. | Case No. 19-cr-00669<br><br>Hon. Edmond E. Chang |

**DEFENDANT JEFFREY RUFFO'S MEMORANDUM OF LAW IN OPPOSITION
TO THE UNITED STATES' MEMORANDUM IN SUPPORT OF
THE ADMISSION OF GX 84 & 463**

Defendant Jeffrey Ruffo respectfully submits this Memorandum of Law in Opposition to the United States' Memorandum in Support of the Admission of GX 84 & 463, Dkt. No. 540 (the "Motion").

GX 84 should be excluded.[1] The exhibit is a March 5, 2008 Bloomberg chat between Mr. Ruffo, then a salesperson at Bear Stearns, and Moore Capital Management ("Moore Capital"), then a Bear Stearns customer. The communication took place eleven days before JPMorgan ("JPM") announced an agreement to acquire Bear Stearns. *See* Form 8-K, filed March 16, 2008, Ex. 99.1 (Press Release), at https://www.sec.gov/Archives/Edgar/data/0000019617/00008982208000301/revised8k.htm. The date of that announcement was March 16, 2008.

---

[1] Counsel for Mr. Smith are separately addressing the admissibility of GX 463 in an opposition brief filed today.

Count One and Count Two, the two conspiracy counts in the Second Superseding Indictment (the "Indictment"), pertain exclusively to alleged trading conduct that occurred while Mr. Ruffo, a non-trader, was a salesperson at JPM. As a result, GX 84 and any other Bear Stearns-related evidence fall outside the scope of the charged conspiracies and can only be admissible as "other acts" under Fed. R. Evid. 404(b).

GX 84 and any other Bear Stearns-related evidence should be excluded because the government failed to provide the requisite notice under Fed. R. Evid. 404(b)(3) and the Court's January 28, 2021 Order. Dkt. No. 260. In the alternative, GX 84 should be excluded because the government, as the proponent of GX 84, has not met and cannot meet its burden to establish admissibility for a non-propensity purpose under Fed. R. Evid. 404(b), and even if it were admissible under 404(b), exclusion of GX 84 would be well-warranted under Fed. R. Evid. 403.

## FACTUAL BACKGROUND

**I.    The Conspiracies Charged in Count One and Count Two Arise Exclusively From Alleged Trading Conduct at JPM.**

The conspiracies charged in Count One and Count Two exclusively concern alleged trading conduct by precious metals traders that occurred while Mr. Ruffo was a salesperson at JPM, not Bear Stearns.

Count One of the Indictment alleges that "between March 2008 and August 2016," Indict. ¶ 18, (1) "the JPMorgan Precious Metals Desk constituted an 'enterprise,'" *id*. at ¶ 17, (2) "the Defendants . . . [were] persons employed by and associated with the JPMorgan Precious Metals Desk," *id*. at ¶ 22, and (3) the purposes of the "racketeering conspiracy" included "[m]aximizing trading profits and minimizing trading losses for the Defendants and their co-conspirators, the JPMorgan Precious Metals Desk, and JPMorgan itself through unlawful trading practices" and "[c]oncealing the unlawful activities of the Defendants and their co-conspirators

from scrutiny by JPMorgan," among others. *Id*. at ¶ 24. Cooperating witnesses John Edmonds and Christian Trunz, and all seven of the unindicted co-conspirators named in the Indictment were employees of JPM with the defendants.[2] *Id*. at ¶¶ 19-21. All forty specific trading sequences alleged in the Indictment occurred while the defendants were employed at JPM. *Id*. at ¶¶ 30-34. The "pattern of racketeering activity" alleged in Count One consists of "multiple acts" of wire fraud affecting a financial institution—namely, JPM. Dkt. No. 512. And "[o]ne of the reasons the Defendants and their co-conspirators" allegedly placed spoof orders was "to service and benefit key [JPM] clients," including Moore Capital (identified as Hedge Fund E), "which were important sources of revenue and market intelligence for the JPMorgan Precious Metals Desk." Indict. ¶ 26(j).

The scope of the § 371 conspiracy charged in Count Two is coextensive with the racketeering conspiracy alleged in Count One in that it is likewise expressly limited to alleged conduct by the defendants while employed at JPM. Count Two, which begins by incorporating by reference every substantive factual allegation from Count One, *id*. at ¶ 47, alleges that "[b]etween March 2008 and August 2016," *id*. at ¶ 22, the defendants engaged in a § 371 conspiracy, the purposes of which included "[m]aximizing trading profits and minimizing losses for the Defendants and their co-conspirators, the JPMorgan Precious Metals Desk, and JPMorgan itself through unlawful trading practices," and "[c]oncealing the unlawful activities of the Defendants and their co-conspirators from scrutiny by JPMorgan," among others. *Id*. at ¶ 49. As with Count One, JPM is the "financial institution" allegedly "affected" by the wire fraud object of the § 371 conspiracy in Count Two. *Id*. at ¶ 48(a).

---

[2] Cooperating witness Corey Flaum worked with, *inter alia*, Mr. Ruffo and Mr. Smith at Bear Stearns prior to March 16, 2008, but never joined JPM. According to the government, Flaum is "not alleged to have been a coconspirator." 6/2/2022 Hr'g Tr. at 11:9-10.

3

In short, neither Count One nor Count Two can be fairly read to include alleged trading conduct at Bear Stearns, which is only mentioned to explain the timing of its acquisition by JPM, *see id*. at ¶ 7 ("In March 2008, JPMorgan announced a merger agreement to acquire Bear Stearns, and the acquisition was completed in May 2008."), and, with reference to Mr. Ruffo, that he "was employed as a salesperson at Bear Stearns from May 2007 until its acquisition by JPMorgan in May 2008." *Id*. at ¶ 18(c).

## II. GX 84 and GX 463

GX 84 is a March 5, 2008 Bloomberg chat between Christopher Pia, then a portfolio manager at Moore Capital, and Mr. Ruffo, then a salesperson at Bear Stearns. According to the government, in GX 84, Mr. Ruffo and Mr. Pia discussed a spot transaction[3] between Moore Capital and Bear Stearns, pursuant to which Moore Capital agreed to sell 50,000 ounces of spot gold to Bear Stearns for $964.80 per ounce. We understand that the government alleges that between 7:21:05 AM CT, when Mr. Pia asked Mr. Ruffo to "sell 50k gold up here," and 7:24:47 AM CT, when Mr. Ruffo communicated a price of "$964.80" per ounce to Mr. Pia, Mr. Smith (then a precious metals trader at Bear Stearns) placed spoof orders to buy gold futures to facilitate better execution of those offers to sell gold futures for the purpose of providing more favorable pricing to Moore Capital. GX 463 is the government's proposed summary chart that allegedly depicts the trading activity by Mr. Smith to fill the spot order from Moore Capital that is discussed in GX 84.

At trial, the government is expected to offer evidence of nine spot transactions between Moore Capital and JPM. For each JPM spot transaction, the government is expected to introduce

---

[3] U.S. Commodity Futures Trading Comm'n, CFTC Glossary (last visited June 12, 2022), https://www.cftc.gov/LearnAndProtect/EducationCenter/CFTCGlossary/glossary_s.html ("Spot Price: The price at which a physical commodity for immediate delivery is selling at a given time and place.").

4

a Bloomberg chat akin to GX 84 and a summary chart akin to GX 463 for the purpose of arguing that Mr. Smith placed spoof futures orders to provide more favorable pricing to Moore Capital, a JPM customer that was covered by Mr. Ruffo.

## ARGUMENT

I.  **Bear Stearns-Related Evidence, Including but not Limited to GX 84, is not Direct Evidence of the Charged Conspiracies.**

The government's attempt to rewrite the indictment, Mot. at 1, to encompass Bear Stearns-related conduct should be rejected. It is self-evident that alleged spoofing in connection with a spot transaction between Moore Capital and Bear Stearns was not and could not have been for the purpose of "maximizing trading profits and minimizing losses for . . . the JPMorgan Precious Metals Desk, and JPMorgan itself" or "[c]oncealing the unlawful activities. . . from scrutiny by JPMorgan." Indict. ¶ 49. Rather, alleged spoofing to benefit a Bear Stearns customer, if admissible at all, is only admissible as "other acts" evidence under Fed. R. Evid. 404(b).[4] *See United States v. Groysman*, No. 10 CR 459 (SJ) (RML), 2011 WL 6131286 (E.D.N.Y. Dec. 8, 2011) (in a healthcare fraud conspiracy case, denying admission of "documentary evidence of the billing practices and history of Groysman's former employer in order to prove her knowledge of intent to defraud in her capacity with a subsequent employer . . . [e]ven assuming the invoices and claims were processed identically in both alleged schemes").

During the pretrial conference on June 10, 2022, the government appeared to concede that the racketeering conspiracy charged in Count One was confined to alleged conduct at JPM, yet maintained that alleged Bear Stearns-related trading conduct constituted direct evidence of

---

[4] The government cannot support its claim that GX 84 and any other Bear Stearns-related should be considered direct evidence because it is "inextricably intertwined" with the charged JPM conspiracies. The "inextricably intertwined" doctrine is not recognized in the Seventh Circuit. *See United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010) (abandoning the "inextricable intertwinement doctrine" because it "has outlived its usefulness" and "become overused, vague, and quite unhelpful").

5

the § 371 conspiracy charged in Count Two, specifically the conspiracy to commit price manipulation.[5] 6/10/2022 Hr'g Tr. at 294-95 ("So I take the point about the JPMorgan desk that relates to the conspiracy charge in Count 1. That actually doesn't relate to the conspiracy charged in Count 2. I mean, Count 2 is the 371 conspiracy between March of 2008 and August of 2016. You know, there's a price manipulation object of that conspiracy. You know, I think a March 2008 chat involving -- March 2008 conduct even pre-merger involving Mr. Ruffo and Mr. Smith is part of that conspiracy that's charged for March 2008."). But nothing in Count Two permits the government to assert that the scope of the § 371 conspiracy differs from the Count One racketeering conspiracy. Count Two incorporates by reference *every* substantive allegation in Count One, and the phrase "between March 2008 and August 2016" in Count One, Indict. at ¶ 18 (defining the "Conspiracy Period"), is the same time period as "[b]etween March 2008 and August 2016" in Count Two. *See id*. at ¶¶ 18, 48.

Indeed, permitting the government to present at trial GX 84 and any other evidence from the Bear Stearns period as direct evidence of the charged conspiracies against Mr. Ruffo, as opposed to as "other act" evidence under Fed. R. Evid. 404(b), would amount to a constructive amendment of the indictment. *See United States v. Penaloza*, 648 F.3d 539, 546 (7th Cir. 2011) (A constructive amendment occurs "when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury.").

---

[5] There are four objects of the § 371 conspiracy – wire fraud affecting a financial institution, commodities fraud, price manipulation, and spoofing – at least three of which are unavailable to support the government's position that Count Two charges a broader conspiracy than Count One. With neither spoofing nor commodities fraud defined as a crime in March 2008, and with the wire fraud affecting a financial institution object expressly naming JPM as being "affect[ed]," the government was left to rely on price manipulation to suggest a broader scope for Count Two than Count One. If the government's reading were accepted, however, it would mean that "March 2008" in the prefatory language of Count Two referred to March 1, 2008 for the price manipulation object and March 16, 2008 or later for the wire fraud affecting a financial institution object.

6

**II. Bear Stearns-Related Evidence, Including but not Limited to GX 84, Should be Excluded Because the Government Failed to Provide the Required 404(b) Notice.**

All evidence the government offers or may offer relating to alleged conduct at Bear Stearns, including but not limited to GX 84, constitutes 404(b) evidence. Mr. Ruffo requested notice of the government's intent to offer 404(b) evidence on December 9, 2019. The government did not provide 404(b) notice on July 9, 2021 as the Court directed and Rule 404(b)(3) requires. *See* Dkt. 260 ("Rule 404(b) . . . due by 07/09/2021").

Fed. R. Evid. 404(b)(3) provides as follows:

In a criminal case, the prosecutor must:

(A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;

(B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and

(C) do so in writing before trial--or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Having failed to provide notice under Fed. R. 404(b)(3), the government should be precluded from offering GX 84 as well as any other evidence from the Bear Stearns period. *See* Fed. R. Evid. 404(b), advisory committee note, 1991 amendment ("Because the notice requirement serves as condition precedent to admissibility of 404(b) evidence, the offered evidence is inadmissible if the court decides that the notice requirement has not been met."); *see also United States v. Vega*, 188 F.3d 1150, 1155 (9th Cir. 1999) (holding that "the trial court abused its discretion in admitting evidence of Vega's prior border crossings and bank deposits" where "the government . . . did not comply with the notice requirements of Rule 404(b)" which is "a condition to the admission of other acts evidence").

**III.     In the Alternative, GX 84 is Inadmissible Under Rules 404(b) and 403.**

The government has not specified a proper purpose or purposes under Fed. R. Evid. 404(b) for which it intends to offer GX 84. Even had the government done so, however, it would be unable to satisfy its burden under *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014). GX 84, when considered along with GX 463, would be offered to show that because Mr. Smith allegedly spoofed in connection with filling a spot order from Moore Capital as a Bear Stearns customer covered by Mr. Ruffo, Mr. Smith allegedly spoofed in connection with his filling of an order by Moore Capital after Moore had become a JPM customer covered by Mr. Ruffo. *See* 6/2/2022 Hr'g Tr. at 75:11-17 ("Mr. Pia who was a client of the [Bear Stearns] desk at Moore Capital at the time puts in an order to sell 50,000 ounces of gold, and then he gives that order to Mr. Ruffo. Mr. Ruffo works side by side with Mr. Smith, and Mr. Smith spoofs up the market to sell the 50,000 ounces of gold. It is the client order for which Mr. Smith spoofed."); *see also* Indict. ¶ 26(j). This is quintessential propensity evidence that should be barred. The government's suggestion that GX 84 could be offered to "show manner or means," 6/2/2022 Hr'g Tr. at 77:7-10, proves the point. *See United States v. Wood*, No. 14-20065-01 (JAR) (JPO), 2016 WL 6680956, at *7 (D. Kan. Nov. 14, 2016) (The "'same manner and means' is not a ground for admissibility under Rule 404(b). Indeed, it smacks of propensity evidence . . .").

Even if the government could proffer a non-propensity purpose for admitting GX 84, exclusion of the exhibit would be well warranted under Fed. R. Evid. 403. The Court of Appeals has warned that "[o]ther-act evidence raises special concerns about unfair prejudice because it almost always carries some risk that the jury will draw the forbidden propensity inference." *Gomez*, 763 F.3d at 857. Using Bloomberg chats and summary charts, the government is planning to offer evidence of nine spot transactions between Moore Capital and JPM to make the

8

same point that the government seeks to make in proposing to offer GX 84 and GX 463. The probative value of having a tenth spot transaction from Bear Stearns, even if admitted for a 404(b) purpose, is substantially outweighed by the prejudice that would result from the jury drawing the "forbidden propensity inference" of "once-a-spoofer, always-a-spoofer."

## CONCLUSION

For the foregoing reasons, Mr. Ruffo respectfully requests that the Court deny the Motion and exclude GX 84.

Dated: June 16, 2022

    Respectfully submitted,

/s/ Bethany Biesenthal
Bethany Biesenthal
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
(312) 269-4303

Guy Petrillo
Daniel Goldman
Leonid Sandlar
PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Floor
New York, NY 10017
(212) 370-0331

*Counsel for Jeffrey Ruffo*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2022, I caused a copy of the foregoing to be filed with the Clerk of the Court through the CM/ECF system, which will provide notice of the filing to all counsel of record.

Respectfully submitted,

 /s/ Bethany Biesenthal
Bethany Biesenthal
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
(312) 269-4303

Guy Petrillo
Daniel Goldman
Leonid Sandlar
PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Floor
New York, NY 10017
(212) 370-0331

*Counsel for Jeffrey Ruffo*