UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>) No. 1:19-CR-00669<br>)<br>v. )<br>)  Judge Edmond E. Chang<br>GREGG SMITH, )<br>MICHAEL NOWAK, and )<br>JEFFREY RUFFO. ) | |

ORDER

This Order accompanies Court Set 1 of the revised jury instructions to explain the edits and decisions reflected in the Court's revisions.

**Functions of the Court and the Jury (page 2).** Court Set 1 adopts Seventh Circuit Pattern 1.01, and adds the separate-consideration language proposed by the defense (for example, "the defendant whom you are considering." The Court generally applies this separate-consideration language throughout Court Set 1. There are a few spots, however, where including this language is unnecessary and renders the instruction too clunky (for example, in the numbered-element lists for each offense). Aside from those spots, the separate-consideration language is generally included.

**Presumption of Innocence/Burden of Proof (page 4).** Court Set 1 adopts Pattern 1.03, which accurately describes these concepts. Separate-consideration language is included.

**Witnesses Requiring Special Caution (page 13).** Court Set 1 is Pattern 3.05 with the following modifications: first, a few style and structure changes were made for comprehensibility. More substantively, the description of the receipt or expectation of a benefits is: "They have received or expect to receive a benefit in return for their cooperation with the government …." The past-tense "received" is needed for Christian Trunz, who testified that it was his understanding that the prosecutors were saying that he could plead guilty in a lenient jurisdiction but going to trial might result in trial in a harsher jurisdiction. (The similar line of questioning with John

1

Edmonds did not result in the same testimony.) The Court assumes that the government would prefer not to specify that the "received" aspect applies only to Trunz, but the government may so request at the pretrial conference. The remainder of the description of the benefit ("expect to receive a benefit") is accurate and hinges on "in return for their cooperation with the government." So the government still may argue that the substantial-assistance motion is dependent on the cooperators telling the truth.

Second, the Pattern instructs that the guilty pleas of the cooperator cannot be considered as evidence against the defendant, but the wording of the Pattern assumes that the cooperators pled guilty to committing the charged offenses (that is, the charged offense in the current trial) with the defendants. That premise does not apply to Mr. Flaum, but the instruction against the guilty plea's consideration as evidence of guilty of the trial defendants still applies. The instruction reflects that change.

Lastly, in light of the concessions by Edmonds and Trunz that they lied during their respective *Shak* depositions, the Pattern sentence for that admission is included.

**Opinion Testimony (page 15).** Court Set 1 adopts Pattern 3.13 to address opinion testimony, but modified to cover lay-opinion testimony as well. The Committee Comment acknowledges this prospect: "If the court wishes to give an instruction concerning the jury's consideration of lay opinion testimony, this instruction may be adapted for that purpose by eliminating the reference to 'the witness' qualifications' as a factor to be considered." Pattern 3.13, Committee Comment. Here, the modification is appropriate because several witnesses offered lay opinions.

**Recorded Conversations (page 16).** Court Set 1 adopts Pattern 3.14, including the Pattern's bracketed language on providing the transcripts if the jury asks for them. In a case of this length, it is appropriate to help the jury with the transcripts if they ask for them. And the instruction warns the jury that the transcripts are just aids, not the evidence themselves. At the jury instructions conference, the Court will ask whether the parties simply want to submit the transcripts to the jury along with all the other allowed evidence. Separately, the instruction also is modified to refer to the evidence display system that the jury will use for deliberations.

The foreign-language instruction has been omitted because it appears that the foreign-language recording will not be introduced into evidence.

**Demonstrative Summaries and Charts Not Received in Evidence (page 18).** Court Set 1 adopts Pattern 3.17, including the bracketed language that is given when the parties dispute the accuracy of demonstratives.

**Separate Consideration of Charges (page 20).** Court Set 1 adopts Pattern 4.06 to explain that each charge must be considered separately.

**Separate Consideration of Defendants (page 21):** Court Set 1 adopts Pattern 4.07, including the bracketed language because some of the evidence is directed at fewer than all of the Defendants.

**Dates and Times of Crimes Charged (page 22).** Court Set 1 adopts Pattern 4.05 with two modifications. First, as the government' proposes, adding "and times" is appropriate given the specific times alleged and the legal principle that the specific time (and specific date) is generally not an element of the crime. There is no basis for the defense's concern that this somehow undermines the unanimity requirement. But Court Set 1 goes on to instruct the jury of a caveat: if the effective date or the statute of limitations requires that the government must prove that the crime happened *after* a specified date, then that date is indeed a fixed date and "reasonably close" is not enough.

**Count One: Existence of Conspiracy (page 23).** Court Set 1 adopts Pattern 5.08(B).

**Count One: Conspiracy to Conduct or Participate in an Enterprise Engaged in a Pattern of Racketeering Activity (page 24).** Court Set 1 adopts the Pattern Instruction for 18 U.S.C. § 1962(d), with the addition of separate-consideration language.

**Definition of Conspiracy (page 25).** Court Set 1 adopts Pattern 5.09. There is no need to refer to "two" conspiracies, as the defense proposes, because the elements instructions will adequately inform the jury on the separate offenses.

**Count One: First Element—Membership in Conspiracy (page 26).** Court Set 1 uses Pattern 5.10. This is the proper instruction because there is no problem with using "knowingly" as the proper mental state because the government will not be making a conscious-avoidance argument and the definition of conspiracy is explicit that an agreement is required.

3

**Count One: First Element—Pattern Requirement—Racketeering Conspiracy (Page 29).** Court Set 1 uses the Pattern Instruction for 18 U.S.C. § 1962(d) but makes one modification in response to the defense's request that wire fraud is the only alleged offense that can qualify as racketeering activity. So the instruction adds: "In this case, the only offense that is alleged to constitute an 'act of racketeering' is wire fraud affecting a financial institution. No other offense can qualify as an act of racketeering in this case."

**Count Two: Conspiracy to Commit Price Manipulation, Wire Fraud Affecting a Financial Institution, Commodities Fraud, and Spoofing (page 32).** Just as with the Count One conspiracy instruction, the defense's request to switch the mental state from "knowingly" to "intentionally" in this instruction is rejected.

**Count Two: First and Second Elements—Definition of Conspiracy and Membership in a Conspiracy (page 33).** Court Set 1 will simply refer the jury (as proposed by the government) to the prior instructions that covered these two instructions, rather than also try to paraphrase the prior instructions.

**Count Two: First and Second Elements—Objects of the Conspiracy (page 34).** Court Set 1 adopts the government's proposal (but modifies the word "crime" to "crimes" to make it plural).

**Count Two: First Element—Unanimity on Objects of the Conspiracy (page 35).** Court Set 1 adopts Pattern Instruction 4.04 but tailors it to the number of objects of the conspiracy and adds the separate-consideration language. As the instruction explains, there cannot be a scenario where, for example, six jurors believe there was a conspiracy to commit commodities fraud and another six jurors only believe there was a conspiracy to commit spoofing. For unanimity, the jurors must be unanimous on at least one of the four objectives.

**Count Two: Third Element—Overt Act (Request 38).** Defense Request 38 would have required the jury to be unanimous in agreeing on which overt act furthered the conspiracy. The request is rejected because, in the Court's reading of precedent, the Seventh Circuit has definitively held that unanimity on the overt act is not required. *United States v. Turner*, 836 F.3d 849, 862 (7th Cir. 2016); *United States v. Griggs*, 569 F.3d 341, 344 (7th Cir. 2009) ("The jurors agreed unanimously on what crime [defendant] had committed—agreed in other words that he had taken a step toward accomplishing the goal of the conspiracy, had gone beyond mere words …. That they may have disagreed on what step he took was inconsequential.").

Also, this separate instruction is not necessary because the "overt act" definition is already incorporated on page 32 of Court Set 1.

**Count Two: Time Frame for Two Objects of the Conspiracy (page 36).** This instruction explains to the jury that the effective date of the commodities-fraud object and the spoofing-offense object were triggered in 2009 and 2011 (respectively). The defense proposal was too broadly worded and might very well have confused the jury, because some explanation is needed to convey that evidence of the crimes spoofing can be considered wire fraud even before Dodd-Frank was enacted.

For the most part, with some legal-jargon-elimination changes and separate-consideration language additions, Court Set 1 uses the government's proposal. But the government's proposal in part was confusing, because the proposal's second sentence in the first paragraph broadly stated that there are no time restrictions price manipulation and wire fraud. In reality, there are statute of limitations restrictions, as well as the charged dates themselves. So that sentence was omitted.

**Counts Three and Four: Attempted Price Manipulation (page 37).** Court Set 1 adopts, for the most part, the defense's instruction but uses the government's introduction. The government's introduction is simpler and more concise. On the elements, however, the defense instruction is better. First, the government's generic-sounding description of the requisite intent ("intent to affect the market price") risks watering down the required mental state, even if defined in the next instruction. There is no need to describe the mental state in two different ways, especially when one way is so watered down.

Second, the government's proposal equates an "overt act" for conspiracy purposes with a "substantial step" for attempt purposes, which is not accurate. It is true that the cases cited by the government sometimes describe a substantial step as an overt act, but none of the cases do so by holding that a substantial step for attempt purposes is the same as the *conspiracy*-purpose version of "overt act." Instead, the cases seem to use "overt act" generically rather than from conspiracy law. *E.g.*, *United States v. Muratovic*, 719 F.3d 809, 815 (7th Cir. 2013). A substantial step is properly defined by Pattern 4.09, and requires that the step "strongly corroborates" the defendant's intent to carry out the underlying crime. Court Set 1 later includes Pattern 4.09.

Court Set 1 uses the definition of commodity from 7 U.S.C. § 1a(9) in lieu of the defense proposal's formulation in the elements.

**Counts Three and Four: First Element—Intent to Create an Artificial Price (page 38).** The Court adopts the defense's title for this instruction, but the defense proposal is unnecessarily dense. For its part, the government's definition was premised on the use of the watered-down intent formulation ("intent to affect a market price"), though the definition itself comes close to accurately defining intent to create an artificial price. Court Set 1 uses the term "actual" as the adjective for "forces of supply and demand," which is supported in principle by the cases cited by both the government and the defense, but eschews the term "legitimate," which is unnecessarily value laden.

**Counts Three and Four: Second Element—Substantial Step (page 39).** As explained earlier in this Order, Court Set 1 adopts Pattern 4.09 (with separate-consideration language).

**Counts Three and Four: Barrier-Option Evidence (Request 43).** Given the removal of barrier-options allegations from this trial, Court Set 1 eliminates this request.

**Counts Three and Four: Timing Requirement (page 40).** Court Set 1 uses the same general format as proposed by the defense, that is, separate paragraphs for Smith and Nowak. And the unanimity requirement is accepted from the defense proposal (the government did not specifically object to the requirement). But to simplify the instruction, Court Set 1 refers to the key date of February 1, 2014, and does not refer to the legal jargon of "statute of limitations."

**Counts Five Through Twenty-Two: Wire Fraud Affecting a Financial Institution (page 41).** Court Set 1 adopts the government's proposal because it is clearer and tracks closer to the Pattern for wire fraud, which is an accurate expression of the law. On the element of "affecting a financial institution," the parties have stipulated to the fifth element and the stipulation has been read to the jury. But it is worth discussing, at the jury instructions conference, whether to simply eliminate the fifth element completely from the instructions. The financial-institution element actually is not a required element for a § 1343 wire fraud. Instead, the financial-institution finding only elevates the statutory maximum from 20 years to 30 years. In another words, it is merely an *Apprendi* element. If there is no realistic chance that the elevated statutory maximum matters in this case, then it might be easier on the jury to just eliminate the requirement and indeed eliminate all other references to it throughout the instructions.

**Counts Five Through Twenty-Two: First Element—Definition of "Scheme to Defraud" (page 43).** Court Set 1 adopts a modestly modified version of the Pattern Instruction for scheme to defraud under 18 U.S.C. § 1343. First, Court Set 1 adds parenthetical numbers to ensure that the structure of the sentence is clear, so the jury understands it must find that the scheme was intended "to deceive or cheat another" *and* is intended "to obtain money or property" or "cause the potential loss of money." This takes care of the defense's objection that the use of the disjunctive in "to deceive or cheat" removes a necessary feature of a scheme to defraud. *See United States v. Chanu*, — F.4th —, 2022 WL 2448255, at *10 (7th Cir. July 6, 2022).

Second, the phrases "from the alleged victims" (for obtaining money or property) and "to the alleged victims" (for causing loss of money or property) are added to the instruction. These additions make it clear that a scheme to defraud must be intended to obtain property from the victim or inflict loss to the victim, rather than a mere plan that incidentally obtains property or incidentally inflicts losses. *See Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020) (explaining that a scheme must intend to "obtain[] money or property") (quoting 18 U.S.C. § 1343); *see id.* at 1573 (explaining that "a property fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme").

On the omissions aspect of the instruction, the Seventh Circuit has made clear that half-truths and omissions are another way to accomplish a fraudulent misrepresentation, *Chanu*, 2022 WL 2448255, at *9 (explaining that "the Supreme Court has explicitly held that a material *omission* can amount to wire fraud") (emphasis in original), and omissions are a viable theory in this case. "Failure to give the whole story may also be fraud, especially when a defendant actively conceals information." *Id.* A half-truth or omission qualifies as a fraudulent misrepresentation "if it is intended to induce a false belief and resulting action to the advantage of advantage of the misleading and disadvantage of the misled. *United States v. Stephens*, 421 F.3d 503, 507 (7th Cir. 2005). So the final sentence of the Pattern Instruction is accurate, and applies to the facts of this case (at least the jury could so find).

**Counts Five Through Twenty-Two: First Element—Proof of Scheme (page 44).** Court Set 1 generally adopts the Pattern Instruction for proof of scheme, which is more concise than the defense proposal and yet is sufficient to cover the concept. There are two modifications: first, the defense's proposed unanimity requirement is included (the government did not object to the requirement, as described below). Second, the statute of limitations dates are included.

**Counts Five Through Twenty-Two: Second Element—Intent to Defraud (page 45).** The Court adopts the same formulation for intent to defraud that was incorporated into the Scheme to Defraud instruction.

**Counts Five Through Twenty-Two: Second Element—Good Faith (Request 50).** Court Set 1 removes request 50 and the Court takes the same approach as the district court in *Vorley*, which was affirmed in *United States v. Chanu*, — F. 4th —, 2022 WL 2448255, at *10–11 (7th Cir. July 6, 2022). On the facts of this case, the good-faith instruction is unnecessary (so there is no upside) and poses a substantial risk of jury confusion (so there is significant downside). First, the instruction is not needed because the very argument that the defense wishes to advance through this instruction is already available in arguing an *absence* of an intent to defraud. *Id.* at *10. Second, the instruction risks misleading jurors into thinking that a defense along the lines of "mistake of law" is viable (it is not). Put another way, given the trial evidence and lines of questioning in this case, the jury might misinterpret this instruction as exculpating a defendant if the defendant did not understand what they did was a violation of the law. Request 50 is excluded.

**Counts Five Through Twenty-Two: Third Element—Materially False or Fraudulent Pretense, Representation, or Promise (page 46).** Court Set 1 modifies the Pattern Instruction for materiality to use the formulation "having a natural tendency to influence" in place of "capable of influencing." The problem with "capable of influencing," standing alone, is that the jury might misunderstand that a "possibility of influence" is sufficient. On top of that, the jury might misperceive that the evaluation is from the mindset of any individual person, rather than an objective, reasonable person standard. Governing case law supports the modification: both the Supreme Court and the Seventh Circuit routinely use both "natural tendency to influence" and "capable of influencing" when defining materiality in federal fraud and false-claims cases. *See, e.g.*, *United States v. Seidling*, 737 F.3d 1155, 1160 (7th Cir. 2013) (defining "materiality" for purposes of analyzing the mail fraud statute as having "'a natural tendency to influence or [is] capable of influencing the decision of the decisionmaking body to which it was addressed.'" (quoting *Neder v. United States*, 527 U.S. 1, 16 (1999))); *United States v. Jackson*, 546 F.3d 801, 815 (7th Cir. 2008) (same); *United States v. Henningsen*, 387 F.3d 585, 589 (7th Cir. 2004) (same); *United States v. Fernandez*, 282 F.3d 500, 508 (7th Cir. 2002) (same); *United States v. Gee*, 226 F.3d 885, 891 (7th Cir. 2000) (same); *see also United States v. Segura*, No. 14-CR-00564, R. 82 at 2–4 (N.D. Ill. May 10, 2016).

**Counts Five Through Twenty-Two: Fourth Element—Wire Communication (page 48).** Court Set 1 adopts the Pattern Instruction for wire communications. "Wire" is somewhat of an outdated term, and the Pattern provides fulsome, present-day examples of what a wire may include.

**Counts Twenty-Four and Twenty-Five: Commodities Fraud (page 50).** Court Set 1 largely adopts the defense's proposal (although the citation to the statute is not needed), which is the same as the Pattern Instruction for wire fraud except that the fourth element (connection with a commodity) is adapted for commodities fraud. The government argues that commodities fraud does not require a false or fraudulent pretense, representation, or promise. It is true that § 1348(1) does not explicitly mention a fraudulent representation, whereas § 1348(2) does. It is also true that both *Coscia* (in the Seventh Circuit) and *Vorley* (in the district court) say that a fraudulent representation is not required for § 1348(1). *Coscia* 866 F.3d 782, 796 (7th Cir. 2017); *United States v. Vorley*, 420 F. Supp.3d 784, 792–93 (N.D. Ill. 2019). But *Coscia* did so in a statement that was not necessary to the case's holding, and thus did not actually analyze the issue. *Vorley* too mentioned the statement in *Coscia*, 420 F. Supp.3d at 792–793, but only in the course of a detailed analysis of why wire fraud covers implied misrepresentations, *id.* at 793–801. In other words, the issue in *Vorley* was *not* whether there is such a thing as a scheme to defraud that does not include even an implied representation. Indeed, *Coscia* also noted that § 1348(1) "was modeled on the federal mail and wire fraud statutes" and "the district court was on solid ground in looking to the pattern jury instructions for those offenses." *Coscia* 420 F. Supp.3d at 799. Those Pattern Instructions do generally require a misrepresentation (which, to repeat, can be accomplished via implied misrepresentations and omissions, as explained earlier in this Order).

It must be acknowledged that § 1348 arguably is closer textually and structurally to the bank fraud statute, § 1344, than it is to mail and wire fraud statutes, §§ 1341, 1343. Unlike the mail and wire fraud statutes, both § 1344 (which was enacted much earlier than commodities fraud) and § 1348 are divided into two subsections. So the government has a fair point in arguing that § 1348(1) can cover different ground than § 1348(2), which explicitly refers to fraudulent representations. But this same distinction poses the puzzle discussed in the Committee Comments to the Pattern Instructions on § 1344(1) (elements) and § 1344(1) (definition of scheme). In particular, the Comment to the definition of a § 13441(1) scheme explains that in *Neder v. United States*, 527 U.S. 1 (1999), the Supreme Court held that materiality is an element under § 1344. Because materiality is still required, the bottom line is that materiality must apply to *something*, and for fraud schemes, that something is a

9

misrepresentation (or, again, an implied misrepresentation or an omission). So, ultimately, Court Set 1 includes a false or fraudulent pretense, representation, or promise as an element of commodities fraud.

**Counts Twenty-Four and Twenty-Five: Unanimity of Specific Acts (page 51).** Court Set 1 largely adopts the government's proposal because it is clearer and is based on Pattern 4.04. But rather than refer to generic "acts," Court Set 1 refers to alleged misrepresentations as the subject for the unanimity. Court Set 1 also includes the separate-consideration language.

**Counts Twenty-Four and Twenty-Five: Second Element—Good Faith (Request 58).** Court Set 1 rejects this proposed good-faith instruction for the same reasons why Request 50 was rejected, as explained earlier in this Order.

**Counts Twenty-Four and Twenty-Five: Third Element—Materially False or Fraudulent Pretense, Representation, or Promise (page 53).** Court Set 1 adopts the defense's proposal. As explained above, the Court concludes that, at least in the context of this case, commodities fraud requires a misrepresentation (which can be accomplished by an implied misrepresentation or an omission), and materiality is a required element. So Court Set 1 will refer the jury back to the materiality instruction for wire fraud.

**Definition of Scheme to Defraud (page 54).** Court Set 1 will refer back to the wire-fraud definition of a scheme to defraud.

**Counts Twenty-Four and Twenty-Five: Fourth Element—Commodity (page 55).** Court Set 1 adopts the defense's proposal to define commodity. This request is appropriate because "commodity" is part of an element of the crime.

**Wire Fraud and Commodities Fraud Distinguished from Spoofing and Rules Violations (page 57).** Court Set 1 adopts a version of the limiting instruction which the Court has provided to the jury during the trial, and further distinguishes the first set of charges from spoofing.

**Counts Twenty-Six and Twenty-Seven: Spoofing—Elements (page 58).** Court Set 1 adopts the government's introductory paragraph but then (as the defense prefers) defines "spoofing" in a separate instruction.

**Counts Twenty-Six and Twenty-Seven: Definition of Spoofing (Page 59).** The definition of spoofing is generally drawn from *United States v. Bases*, 18-CR-00048, R. 623 at 38, which is an accurate statement of the law and neutrally worded. But Court Set 1 moves the time modifier—"at the time that the order was placed"—earlier in the definitional sentence so that it is closer to the phrase "unconditional intent to cancel." Also, Court Set 1 adds the word "unconditional" to modify "intent to cancel," because the jury has heard evidence of lawful orders that for which traders may conditionally intend to cancel (for example, fill-or-kill orders). Lastly, Court Set 1 removes "conscious desire" from the *Bases* instruction because it does not seem to add anything beyond what the word "purpose" already means.

**Relevant Date Considerations for Counts Twenty-Six and Twenty-Seven (page 61).** Court Set 1 is a mix of the government's and the defense's proposals, blending the government's formulation using the limitations date of February 1, 2014, with the defense proposal to separate the two Defendants more clearly and include references to the pertinent paragraph numbers. Court Set 1 also incorporates the last sentence from each paragraph of the defense's proposal, namely, "In addition, you must agree unanimously on which particular trading sequence is the basis for your guilty verdict."

**CFTC and CME Investigations (page 62).** Court Set 1 adopts a version of the limiting instruction which the Court provided to the jury throughout the trial. At the jury instructions conference, the Court will ask whether it is accurate to say that the CME closed its investigation without taking further action.

**Verdict Forms.** The Court adopts the government's proposed verdict forms (with some formatting changes). Special verdicts are disfavored because they pose the risk of removing the general freedom of the jury in approaching deliberations how they see fit, *United States v. Sababu*, 891 F.3d 1308, 1325–26 (7th Cir. 1989), and forcing the jury to answer questions that might not need to be answered at all. For example, if the jury finds the Defendants guilty on Count Two and unanimously agree on one of the objects, why would they need to keep going to decide whether the other three objects have been proven? The answer is they do not. Yet the special verdict would require the jury to decide whether the other objects are proven or not proven. Against that significant disadvantage, the unanimity instructions and the statute-of-

limitations instructions already will inform the jury of the pertinent principles. The request is rejected.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: July 26, 2022